UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
SETH ADAM P.,

                         Plaintiff,        <u>DECISION AND ORDER</u>
                                           7:24-cv-02684-GRJ

        v.

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
-------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

In October of 2019, Plaintiff Seth Adam P.[1] applied for Supplemental Security Income Benefits under the Social Security Act. The Commissioner of Social Security denied the application.  Plaintiff, represented by McAdam & Fallon, P.C., Timothy S. McAdam, Esq., of counsel, and Irwin M. Portnoy & Associates, P.C., Irwin Milton Portnoy, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 11).

This case was referred to the undersigned on March 18, 2025. Presently pending is Plaintiff's Motion for Judgment on the Pleadings

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

pursuant to Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket

No. 25). For the following reasons, Plaintiff's motion is due to be denied,

and this case is dismissed.

## I.  BACKGROUND

### A.    Administrative Proceedings

Plaintiff applied for benefits on October 31, 2019, alleging disability

beginning May 24, 2012. (T at 9).[2]  Plaintiff's application was denied initially

and on reconsideration.  He requested a hearing before an Administrative

Law Judge ("ALJ").  A hearing was held on January 20, 2023, before ALJ

Laura Michalec Olszewski. (T at 34-74). Plaintiff appeared with an attorney

and testified. (T at 41-66). The ALJ also received testimony from Rocco

Meola, a vocational expert. (T at 66-71).

### B.    ALJ's Decision

On May 22, 2023, the ALJ issued a decision denying the application

for benefits. (T at 6-27).

The ALJ found that Plaintiff had not engaged in substantial gainful

activity since October 31, 2019 (the date he applied for benefits). (T at 12).

The ALJ concluded that Plaintiff's schizoaffective disorder, substance

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 23.

use disorder, bipolar disorder, generalized anxiety disorder, post-traumatic stress disorder (PTSD), and degenerative disc disease of the lumbar spine were severe impairments as defined under the Social Security Act. (T at 12).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 12).

At step four of the sequential analysis the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR 416.967 (b), with the following limitations: he can occasionally climb ramps and stairs, but should never climb ladders and scaffolds; and can occasionally balance and stoop, but never kneel, crouch or crawl. (T at 14).

The ALJ further found Plaintiff limited to work in a low stress environment, defined as requiring no more than occasional use of judgment, occasional decision-making, and occasional changes in work setting, with simple and routine tasks, and only occasional interaction with supervisors, co-workers, and the public. (T at 14).

The ALJ concluded that Plaintiff could not perform his past relevant work as a carpenter. (T at 19).  However, considering Plaintiff's age (39 on

the application date), education (limited), work experience, and RFC, the

ALJ determined that there are jobs that exist in significant numbers in the

national economy that Plaintiff can perform. (T at 19).

As such, the ALJ found that Plaintiff had not been under a disability,

as defined under the Social Security Act, and was not entitled to benefits

for the period between October 31, 2019 (the application date) and May 22,

2023 (the date of the ALJ's decision). (T at 20).

On February 2, 2024, the Appeals Council denied Plaintiff's request

for review, making the ALJ's decision the Commissioner's final decision. (T

at 1-5).

C.    *Procedural History*

Plaintiff commenced this action, by and through his counsel, by filing

a Complaint on April 9, 2024. (Docket No. 1).  On August 26, 2024, Plaintiff

filed a motion for judgment on the pleadings. (Docket No. 25).  The

Commissioner interposed a brief in opposition to the motion and in support

of a request for judgment on the pleadings, on November 19, 2024.

(Docket No. 26).

## II.  APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

### B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without

considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503

(S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v),

416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the

burden shifts to the Commissioner at step five. *See Green-Younger v.

Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner

determines whether claimant can perform work that exists in significant

numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101,

103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.  DISCUSSION

Plaintiff raises five main arguments in support of his request for

reversal of the ALJ's decision.  First, he challenges the ALJ's step two

analysis.  Second, Plaintiff argues that the ALJ erred by failing to

incorporate limitations in his ability to perform stooping.  Third, he contends

that the ALJ did not adequately develop the record.  Fourth, Plaintiff asserts that the ALJ's assessment of the medical opinion evidence was flawed, which undermines the RFC determination.  Fifth, he challenges the ALJ's assessment of his subjective complaints.  The Court will address each argument in turn.

### A.    Step Two Analysis

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co workers and usual work situations." *Gibbs v. Astrue*, No. 07-Civ-10563, 2008 WL 2627714, at \*16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l) (5).

Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or

impairment" is not, by itself, sufficient to render a condition "severe."

*Coleman v. Shalala*, 895 F.Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding

of 'not severe' should be made if the medical evidence establishes only a

'slight abnormality' which would have 'no more than a minimal effect on an

individual's ability to work.'" *Rosario v. Apfel*, No. 97-CV-5759, 1999 WL

294727 at *5 (E.D.N.Y. March 19,1999) (quoting *Bowen v. Yuckert*, 482

U.S. 137, 154 n. 12 (1987)).

As noted above, the ALJ concluded that Plaintiff's schizoaffective

disorder, substance use disorder, bipolar disorder, generalized anxiety

disorder, PTSD, and degenerative disc disease of the lumbar spine were

severe impairments. (T at 12).

Plaintiff contends that the ALJ should also have found his intellectual

disability and antisocial personality disorder to be severe impairments.

Notably, however, Plaintiff did not allege an intellectual disability or

personality disorder either in his application for benefits (T at 380) or during

his hearing testimony.  (T at 62-63).

Further, while Plaintiff cites IQ scores from long before the alleged

onset date, he points to no evidence demonstrating that he has an

intellectual impairment that significantly limits his ability to perform basic

work activities.  Likewise, although Plaintiff references interpersonal

difficulties, he fails to identify evidence of additional work-related limitation arising from these difficulties.

The ALJ acknowledged and considered the evidence of Plaintiff's medically determinable mental impairments, found that Plaintiff had several severe impairments, and incorporated mental functioning limitations into the RFC determination, including limiting Plaintiff to simple and routine tasks and no more than occasional interpersonal interactions. (T at 12-14).

Plaintiff has not pointed to any additional limitations specifically related to his alleged intellectual disability and/or anti-social personality disorder that the ALJ neglected to consider when assessing his RFC.

For these reasons the Court finds no error in the ALJ's step two analysis. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013)("Because these conditions were considered during the subsequent steps, any error was harmless.")(citing *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir.2010) (finding harmless error because ALJ's consideration of a doctor's report would not have changed the overall adverse determination)).

B.    *Stooping*

A claimant's "residual functional capacity" ("RFC") is his or her "maximum remaining ability to do sustained work activities in an ordinary

work setting on a continuing basis." *Melville*, 198 F.3d at 52 (quoting SSR 96-8p). When assessing a claimant's RFC, an ALJ must consider medical opinions regarding the claimant's functioning and make a determination based on an assessment of the record as a whole. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.9527(d)(2) ("Although we consider opinions from medical sources on issues such as ...your residual functional capacity...the final responsibility for deciding these issues is reserved to the Commissioner.").

As noted above, the ALJ determined that Plaintiff retained the RFC to perform light work, as defined in 20 CFR 416.967 (b), with the following limitations: he can occasionally climb ramps and stairs but should never climb ladders and scaffolds; and can occasionally balance and stoop, but never kneel, crouch or crawl. (T at 14).

Plaintiff contends that the ALJ erred by failing to incorporate a limitation in his ability to perform stooping. The problem is that Plaintiff cites no evidence in support of this claim and the ALJ's assessment is supported by substantial evidence. Dr. Paul Mercurio performed a consultative examination in January of 2020. He assessed mild limitation in Plaintiff's ability to repetitively climb stairs, bend, lift, carry, need, reach, and handle objects, but no impairment with respect to stooping. (T at 634).

Dr. Kautilya Puri performed a consultative examination in November of 2020.  Dr. Puri opined that Plaintiff had only mild limitation in his ability to squat, bend, stoop, kneel, and lift weights. (T at 1689).

    C.   *Development of the Record*

Social Security proceedings are non-adversarial and the ALJ is obliged "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111, 147 L. Ed. 2d 80, 120 S. Ct. 2080 (2000) (citation omitted). This obligation applies even if the claimant is represented by counsel. *See, e.g., Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999)(citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)). The ALJ's duty to develop the record has been described as a "bedrock principle of Social Security law." *Batista v. Barnhart*, 326 F.Supp.2d 345, 353 (E.D.N.Y.2004)(citing *Brown v. Apfel*, 174 F.3d 59 (2d Cir.1999)).

Plaintiff contends that the ALJ should have further developed the record by seeking additional educational records, which Plaintiff believes "may shed light on his mental and behavioral problems in school." (Docket No. 25, at p. 22).  Plaintiff's conclusory argument is without merit.

"[A]n ALJ is not required to attempt to obtain additional evidence to fill *any* gap in the medical evidence; rather an ALJ is required to do so only

where the facts of the particular case suggest that further development is necessary to evaluate the claimant's condition fairly." *Francisco v. Comm'r of Soc. Sec.*, No. 13CV1486 TPG DF, 2015 WL 5316353, at *11 (S.D.N.Y. Sept. 11, 2015)(emphasis in original); *see also Sampson v. Saul*, No. 19CIV6270PAESN, 2020 WL 6130568, at *6 (S.D.N.Y. Oct. 16, 2020).

Here, the record contains extensive records regarding Plaintiff's mental and social functioning, including two consultative psychiatric evaluations.  (T at 625-29, 1692-96).

Moreover, Plaintiff does not identify with any specificity the records he claims are lacking nor does he explain how those records would materially change the outcome, beyond speculating that they "may shed light." *See Dutcher v. Astrue*, 2011 WL 1097860, at *5 (N.D.N.Y. Mar. 7, 2011) ("Plaintiff cannot simply identify arguable gaps in the administrative record and claim that these gaps are a *per se* basis for remand."); *Curley v. Comm'r of Soc. Sec. Admin.*, 808 F. App'x 41, 44 (2d Cir. 2020)("Moreover, although he asserts that these records are critical, Curley did not provide them to the district court and does not describe their contents."); *see also Morris v. Berryhill*, 721 F. App'x 25, 27-28 (2d Cir. 2018).

Lastly, the ALJ held the record open after the administrative hearing to allow Plaintiff's counsel time to submit additional evidence (T at 72-73),

which counsel submitted without any indication that further development of the record was needed. (T at 1967-2088). *See Torres v. Colvin*, No. 12 CIV. 6527 ALC SN, 2014 WL 4467805, at *6 (S.D.N.Y. Sept. 8, 2014)("Because the record was held open and Plaintiff failed to provide supplemental evidence, the ALJ fulfilled his duty to develop the record.").[3]

###     D.    Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence. The revised regulations apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c.  Because Plaintiff applied for benefits after that date, the new regulations apply here.

The ALJ no longer gives "specific evidentiary weight to medical opinions," but rather considers all medical opinions and "evaluate[s] their

---

[3] Plaintiff also suggests, in passing, that additional records might "shed light" on "impairments in his lumbar spine." (Docket No. 25, at p. 22).  This conclusory claim fails for the reasons stated above.

persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. *See* 20 C.F.R. § 404.1520c (a), (b)(2).   The ALJ is required to "articulate how [he or she] considered the medical opinions" and state "how persuasive" he or she finds each opinion, with a specific explanation provided as to the consistency and supportability factors. *See* 20 C.F.R. § 404.1520c (b)(2).

Consistency is "the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources." *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)(citing 20 C.F.R. § 416.920c(c)(2)).  The "more consistent a medical opinion" is with "evidence from other medical sources and nonmedical sources," the "more persuasive the medical opinion" will be. *See* 20 C.F.R. § 404.1520c(c)(2).

Supportability is "the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations." *Dany Z*, 531 F. Supp. 3d at 881. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520 (c)(1), 416.920c(c)(1).

Plaintiff challenges the ALJ's analysis of the medical opinion evidence regarding his mental and physical limitations.  The Court will address each category in turn.

### 1.   Opinion Evidence Regarding Mental Functioning

Dr. Konstantinos Tsoubris performed a consultative psychiatric evaluation in January of 2020.  He diagnosed schizoaffective disorder, bipolar type; generalized anxiety disorder; panic disorder; and unspecified disruptive impulse-control and conduct disorder. (T at 628).

Dr. Tsoubris assessed moderate limitation in Plaintiff's ability to understand, remember, and apply simple directions and instructions; marked impairment as to understanding, remembering, and applying simple directions and instructions and with using reason and judgment to make work-related decisions.  (T at 628).  He opined that Plaintiff had marked impairment in his ability to: interact adequately with supervisors, co-workers, and the public; sustain concentration and perform at a consistent pace; sustain an ordinary routine and regular attendance; and regulate emotions, control behavior, and maintain well-being. (T at 628).

The ALJ found Dr. Tsoubris's assessment of marked limitations not persuasive. (T at 16).  The Court finds the ALJ's conclusion supported by substantial evidence and consistent with applicable law. Here's why.

First, Dr. Tsoubris's assessment is inconsistent with other medical opinion evidence.

Dr. Alison Murphy performed a consultative psychiatric evaluation in November of 2020.  She diagnosed specific learning disorder, unspecified depressive disorder, unspecified anxiety disorder, post-traumatic stress disorder, unspecified bipolar disorder, and history of unspecified schizophrenia disorder. (T at 1695).

Dr. Murphy assessed no limitation in Plaintiff's ability to understand, remember, or apply simple directions or instructions and mild impairment as to understanding, remembering, or applying complex directions and instructions. (T at 1695).  She opined that Plaintiff had moderate impairment in his ability to use reason and judgment to make work-related decisions; interact adequately with supervisors, coworkers, and the public; sustain concentration and pace; sustain an ordinary routine and regular attendance; and regulate his emotions, control behavior, and maintain well-being. (T at 1695).

Dr. Murphy's opinion is supported by, and consistent with, the assessments of Dr. Momot-Baker and Dr. Ferrin, the non-examining State Agency review physicians, who likewise opined that Plaintiff had moderate

impairment in his ability to meet the mental demands of basic work activity. (T at 96, 122).

The ALJ found the assessments of Dr. Murphy, Dr. Momot-Baker, and Dr. Ferrin persuasive (T at 17-18) and incorporated limitations into the RFC consistent with moderate functional impairments (*i.e.,* low stress work, involving simple and routine tasks, and no more than occasional use of judgment, decision-making, changes, or social interaction). (T at 14). *See McIntyre v. Colvin*, 758 F.3d 146, 150-51 (2d Cir. 2014)(finding that ALJ appropriately accounted for moderate work-related psychiatric limitations by limiting the claimant to unskilled, low stress work involving limited contract with others); *Martinez v. Comm'r of Soc. Sec.*, No. 13-CIV-159-KMK-JCM, 2016 WL 6885181, at *14 (S.D.N.Y. Oct. 5, 2016), *report and recommendation adopted*, 2016 WL 6884905 (S.D.N.Y. Nov. 21, 2016)(noting that "[moderate] limitations in concentration, dealing with stress, and socialization have been found to be consistent with an RFC for unskilled work."); *Lee W. v. Comm'r of Soc. Sec.*, No. 1:20-CV-008-DB, 2021 WL 1600294 at *6 (W.D.N.Y. Apr. 23, 2021) ("As such, unskilled work, by definition, already accounts for limitations in mental functioning, including limitations interacting with others and learning new tasks.");

*Cepeda v. Comm'r of Soc. Sec.*, No. 19-CV-4936 (BCM), 2020 WL
6895256, at *12 (S.D.N.Y. Nov. 24, 2020)(collecting cases).

Second, the ALJ relied on a reasonable reading of the record,
concluding that the generally normal mental status examination findings,
along with Plaintiff's activities of daily living (which included living
independently, performing household chores, shopping, and working in
construction after the alleged onset date), were not consistent with marked
impairment in mental functioning. (T at 15-18, 58, 545-46, 818-19, 1089,
1092, 1097, 1185, 1950-51, 1965, 1989, 2005, 2016, 2021, 2025).

Although ALJs must be careful not to overestimate the significance of
a claimant's ability to be cooperative and appropriate during brief visits with
supportive medical providers, such evidence can support a decision to
discount marked or extreme limitations. *See, e.g., Knief v. Comm'r of Soc.
Sec.*, No. 20 Civ. 6242 (PED), 2021 WL 5449728, at *1–2, 8–9 (S.D.N.Y.
Nov. 22, 2021) (affirming ALJ decision based on treatment records and
mental status examinations that claimant had "meaningful, but not
profound, mental restrictions" with chronic anxiety and mood disturbances,
adequately treated with regular psychiatric appointments and psychiatric
medications); *Burchette v. Comm'r of Soc. Sec.*, No. 19 CIV. 5402 (PED),
2020 WL 5658878, at *10 (S.D.N.Y. Sept. 23, 2020)("In sum, Dr. Phillips'

opinion, combined with largely unremarkable mental status examination findings in the treatment record and plaintiff's ADLs, provide substantial evidence for the ALJ's RFC determination.").

Likewise, while ALJs must not overinterpret a claimant's ability to perform limited activities of daily living, an ALJ may discount an assessment of marked impairment where, as here, the claimant's activities could reasonably be considered inconsistent with that level of impairment. *See Riaz v. Comm'r of Soc. Sec*., No. 20CIV8418JPCSLC, 2022 WL 6564018, at *15 (S.D.N.Y. Aug. 5, 2022)(collecting cases), *report and recommendation adopted*, No. 20CIV8418JPCSLC, 2022 WL 4482297 (S.D.N.Y. Sept. 27, 2022).

The ALJ's assessment of Plaintiff's limitations in meeting the mental demands of basic work activity, with the restrictions incorporated into the RFC determination, is supported by substantial evidence, including a reasonable reading of the record and appropriate consideration of the medical opinion evidence. *See, e.g., Knief v. Comm'r of Soc. Sec*., No. 20 Civ. 6242 (PED), 2021 WL 5449728, at *1–2, 8–9 (S.D.N.Y. Nov. 22, 2021) (affirming ALJ decision based on treatment records and mental status examinations that claimant had "meaningful, but not profound, mental restrictions" with chronic anxiety and mood disturbances, adequately

treated with regular psychiatric appointments and psychiatric medications); *Burchette v. Comm'r of Soc. Sec.*, No. 19 CIV. 5402 (PED), 2020 WL 5658878, at *10 (S.D.N.Y. Sept. 23, 2020)("In sum, Dr. Phillips' opinion, combined with largely unremarkable mental status examination findings in the treatment record and plaintiff's ADLs, provide substantial evidence for the ALJ's RFC determination.").[4]

### 2.    *Opinion Evidence Regarding Physical Functioning*

As noted above, Dr. Paul Mercurio performed a consultative examination in January of 2020.

Plaintiff contends that the ALJ did not take adequate account of the fact that Dr. Mercurio's examination showed that Plaintiff's lumbar spine flexion was limited to 80 degrees. (T at 633).

However, notwithstanding that finding, Dr. Mercurio assessed only mild limitation in Plaintiff's ability to repetitively climb stairs, bend, lift, carry, need, reach, and handle objects. (T at 634).  Dr. Mercurio opined that Plaintiff had no limitation in his ability to sit, stand, or walk. (T at 634).  This

---

[4] Plaintiff also asserts that his mental impairments meet or medically equal the requirements of Listing 12.05B (Intellectual Disorder).  While the IQ testing of record shows that Plaintiff demonstrates significantly subaverage intellectual functioning, as required under the Listing, Plaintiff would also need to establish extreme or marked impairment in the domains of mental functioning.  As discussed above, the ALJ's conclusion that Plaintiff had no more than moderate mental limitations is supported by substantial evidence.

assessment of Plaintiff's functioning is consistent with the opinion of Dr. Puri, another consultative examiner, who opined that Plaintiff had only mild limitation in his ability to squat, bend, stoop, kneel, and lift weights. (T at 1689).

The ALJ reasonably found these opinions supported by the treatment record and Plaintiff's activities of daily living (which included employment in the construction industry after the alleged onset date). (T at 16). However, the ALJ recognized MRI findings indicating multilevel disc disease and gave some credence to Plaintiff's subjective complaints of pain and limitation. (T at 15, 16, 1016, 1559). The ALJ thus found Plaintiff somewhat more limited and restricted him to a reduced range of light work. (T at 14).

This assessment is supported by substantial evidence, including a reasonable reading of the record and appropriate consideration of the medical opinion evidence. *See Baker o/b/o Baker v. Berryhill*, No. 1:15-CV-00943-MAT, 2018 WL 1173782, at *2 (W.D.N.Y. Mar. 6, 2018)("Where an ALJ makes an RFC assessment that is *more* restrictive than the medical opinions of record, it is generally not a basis for remand.")(emphasis in original)(collecting cases); *see also Rosa v. Callahan*, 168 F.3d 72, 29 (2d Cir. 1999)(noting that "the ALJ's RFC finding need not track any one medical opinion").

### E.    Subjective Complaints

A claimant's subjective complaints of pain and limitation are "an important element in the adjudication of [social security] claims, and must be thoroughly considered in calculating the [RFC] of a claimant." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (citation omitted); *see also* 20 C.F.R. § 416.929.

However, "the ALJ is … not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). Rather, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of other evidence in the record." *Id.* (citation omitted); *see also Henningsen v. Comm'r of Soc. Sec.*, 111 F. Supp. 3d 250, 267 (E.D.N.Y. 2015) ("The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and 'to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant.'" (quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979))).

The ALJ follows a two-step process in evaluating a claimant's subjective complaints.

First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier*, 606 F.3d at 49 (citation omitted).

Second, "the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Id*. (citation, alterations, and quotation marks omitted). The ALJ must "consider all of the available medical evidence, including a claimant's statements, treating physician's reports, and other medical professional reports." *Fontanarosa v. Colvin*, No. 13-CV-3285, 2014 U.S. Dist. LEXIS 121156, at *36 (E.D.N.Y. Aug. 28, 2014) (citing *Whipple v. Astrue*, 479 F. App'x 367, 370-71 (2d Cir. 2012)).

If the claimant's allegations of pain and limitation are "not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors*, 370 F. App'x at 184.  This inquiry involves seven (7) factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the

claimant's functional limitations and restrictions as a result of the pain. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).

If the ALJ discounts the claimant's subjective complaints, the ALJ "must explain the decision to reject a claimant's testimony "with sufficient specificity to enable the [reviewing] Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether [the ALJ's] decision is supported by substantial evidence." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 280 (S.D.N.Y. 2010)(alterations in original, citations omitted).

In the present case, Plaintiff testified as follows:  He was 42 years old on the date of the administrative hearing and attended school through the 11th grade. (T at 41).  He is separated, with a 10-year-old daughter in her mother's custody. (T at 41-42).  He lives alone in an apartment. (T at 44). He sleeps for extended periods and eats infrequently. (T at 54-55).  He attends to personal hygiene, household chores, and shopping. (T at 54-55, 57-58).  Problems with concentration and anxiety prevent him from working. (T at 60).  Psychiatric issues have caused him difficulties throughout his life. (T at 62).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but concluded that Plaintiff's statements as to the intensity, persistence, and

limiting effects of those symptoms were not entirely consistent with the record. (T at 17).

While Plaintiff suffers from pain and limitation the ALJ did not dismiss Plaintiff's subjective complaints. Instead, the ALJ found Plaintiff was limited to a reduced range of light work. (T at 14).  However, "disability requires more than mere inability to work without pain." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983). "Otherwise, eligibility for disability benefits would take on new meaning." *Id.*

Here, the ALJ offered specific support for the decision to discount Plaintiff's subjective complaints, including a reasonable reading of the treatment notes and clinical assessments, an appropriate reconciliation of the medical opinion evidence, and proper consideration of the activities of daily living.  (T at 17-18).

This is sufficient to sustain the disability determination under the deferential standard of review applicable here.  *See Stanton v. Astrue,* 370 Fed App'x 231, 234 (2d Cir. 2010)(stating that courts will not "second-guess the credibility finding . . . where the ALJ identified specific record-based reasons for his ruling"); *Hilliard v. Colvin*, No. 13 Civ. 1942, 2013 U.S. Dist. LEXIS 156653, at *48 (S.D.N.Y. Oct. 31, 2013)(finding that ALJ "met his burden in finding [subjective] claims not entirely credible because

[claimant] remains functional in terms of activities of daily living and the objective medical evidence fails to support her claims of total disability based on pain").

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 25) is DENIED; the Commissioner is GRANTED judgment on the pleadings; and this case is DISMISSED. The Clerk is directed to enter judgment in favor of the Commissioner and then close the file.

Dated: March 27, 2025                     *s/ Gary R. Jones*
                                          GARY R. JONES
                                          United States Magistrate Judge